## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL MERRILL and CAROL MERRILL, on behalf of themselves and all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>DOREL JUVENILE GROUP, INC.<br><br>Defendant. | CIVIL ACTION NO.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Plaintiffs Michael and Carol Merrill ("Plaintiffs") bring this action for themselves and on behalf of all similarly situated persons who purchased certain defective infant strollers designed, manufactured, and distributed by Defendant Dorel Juvenile Group, Inc. ("Dorel").

2. Since 2002, Dorel has designed, marketed and distributed the Cosco Juvenile Deluxe Comfort Ride Stroller with Canopy, Model -01834 infant stroller (the "Stroller").

3. At the time of sale, the Strollers contain by design a dangerous, unguarded pinch point that creates an unreasonable risk of harm to purchasers and users of the Stroller. Marketing and instruction materials provided with the Stroller at the point of purchase fail to contain a warning regarding the pinch point, and fail to contain instructions on how Stroller users might avoid and/or minimize their risk of injury. This defect is unreasonably dangerous. as it can cause users of the Stroller serious and permanent injury during normal and foreseeable use.

4. Dorel knows or should know that the Stroller's design is defective, unreasonably dangerous and not fit for its intended purpose of being safe and easy for consumers to use. Nevertheless, Dorel has actively concealed and failed to disclose this defect from Plaintiffs and

the Class Members at the time of purchase and thereafter.  Plaintiffs are informed and believe that many consumers have been injured by the defective Stroller.

5.      For example, in the parallel class action of *Sanchez v. Walmart Stores, Inc., Dorel Juvenile Group, Inc.*, U.S. District Court, Eastern District of California, No. 06-2573, a relative of the plaintiff Sanchez suffered a severe laceration when, while attempting to open his stroller, his thumb became trapped in the entrapment point.  The cut was so deep that it caused painful nerve damage resulting in a permanent disability to the user's thumb.  The court in *Sanchez* recently denied the defendants' motion for summary judgment.

6.      Despite notice of the defect from customer complaints, Dorel has not recalled the Strollers to repair the defect, and has not offered class members a suitable repair or replacement free of charge.

7.      As a result of the defect in the Strollers' construction, Plaintiffs and the Members of the Class have suffered damages.

## PARTIES

8.      Plaintiffs Michael and Carol Merrill ("Plaintiffs") reside in Placer County, California.  Plaintiffs purchased a new Stroller for their child at Wal-Mart in Roseville, California in 2007.  Both Merrills had had numerous close calls with the latches of the Stroller.  The Merrills purchased a replacement stroller manufactured by another company on August 10, 2008 at Denio's Market in Roseville, California.

9.      Defendant Dorel Juvenile Group, Inc. ("Dorel") is a corporation, incorporated in Massachusetts, with its headquarters and principal place of business in the State of Indiana, and its juvenile design headquarters in Massachusetts.  Plaintiffs are informed and believe that Dorel's decisions regarding the marketing and instructions materials provided with its Stroller occur at the company's facility, located in Foxboro, Massachusetts.  Goodbaby, a Chinese corporation and the manufacturer of the defective Strollers, has offices located in the same building in Foxboro, Massachusetts as Dorel.

2

## FACTUAL ALLEGATIONS

18.     Since 2002, Dorel has designed, marketed and distributed the Strollers.  Plaintiffs are informed and believe that Dorel has sold, directly or indirectly through dealers and other retail outlets, thousands, if not hundreds of thousands, of Strollers in Massachusetts and nationwide.

19.     The design of the Stroller contains a dangerous, unguarded pinch point, which can cause serious and permanent injury during normal, expected and foreseeable use.  Specifically, the main hinge on either side of the Stroller contains a danger point which can slice/sever a finger inadvertently placed within it.  Additionally, because of the specific design of the hinge, there is a risk that a stroller user's finger can be fully entrapped as the Stroller is unfolded.  The side plates of the Stroller hinges are extremely, and unnecessarily sharp, creating a "meat cleaver"-like effect and further exacerbating the risk of potential harm to Stroller operators.  This defect is substantially and unreasonably dangerous, and its effect is magnified because typical stroller users, including parents, babysitters, siblings and/or other relatives, are often distracted when folding and unfolding the Stroller, as their attention is required to supervise the child who will ride in the Stroller.

20.     Despite the existence of this dangerous defect, Dorel has failed to provide adequate warnings and/or instructions regarding the installation and use of the Stroller to help parents and other users of the stroller to avoid finger entrapment or other injury.  However, even if the proper warnings and/or instructions were provided, it is unlikely that the Stroller could be used safely and without risk of injury.

21.     Although the Consumer Product Safety Commission (Commission) has not specifically ruled whether the Stroller is a hazardous substance, it presents a mechanical hazard pursuant to the definition set by the regulations promulgated pursuant to the Federal Hazardous Substances Act (FHSA).  A toy or article presents a mechanical hazard "if, in normal use or

4

when subjected to reasonably foreseeable damage or abuse, its design or manufacture presents an unreasonable risk of personal injury or illness . . . (iii) From points or other protrusions, surfaces, edges, openings or closures; [or] (iv)  From moving parts." 16 C.F.R. 1500.3 (b)(17).  The Stroller at issue clearly contains surfaces, edges, openings, closures, or moving parts that create a risk of injury to children during normal use or reasonably foreseeable damage or abuse.

        22.     Plaintiffs are informed and believe that customers have reported the defect in the Strollers' design to Dorel directly and through its dealers.  Plaintiffs are informed and believe that on dozens of occasions, consumers have been injured while folding or unfolding the Stroller, and have reported these injuries to Dorel or its dealers.  For example, in *Sanchez v. Walmart Stores, Inc., Dorel Juvenile Group, Inc.*, U.S. District Court, Eastern District of California, No. 06-2573, a relative of Sanchez suffered a severe laceration when, while attempting to open his stroller, his thumb became trapped in the entrapment point.  The cut was so deep that it caused painful nerve damage resulting in a permanent disability to the user's thumb. Also, Plaintiffs are informed and believe that the Strollers failed to comply with Dorel's own internal design requirements for strollers and carriages.  Dorel is fully aware of the defect in the Strollers, and how potentially dangerous the defective condition is to consumers.  Despite this, Dorel has actively concealed the existence and nature of the defect from Plaintiffs and the Members of the Class at the time of purchase and thereafter.  Specifically, Dorel has:

        a.     failed to disclose, at and after the time of purchase, any and all known material defects or material nonconformity of the Strollers, including the unreasonably dangerous latch located at the hinge;

        b.     failed to disclose at the time of purchase that the Strollers were not in good working order, were defective and were not fit for their intended purpose; and

        c.     failed to disclose or actively concealed the fact that the Stroller's design was defective, despite the fact that Defendant learned of such defects through internal testing and consumer complaints as early as 2002; and

d.      caused Plaintiffs and Members of the Class to expend money in purchasing the defective Strollers, and has caused them to incur the costs of discarding and replacing the Strollers with a safer, non-defective alternative.

23.     Dorel has not recalled the Strollers to repair the defect, has not offered to its customers a suitable replacement free of charge.

24.     The Members of the Class have not received the value for which they bargained when they purchased the Strollers.

25.     As a result of the defect, the value of the Strollers has diminished.

## TOLLING OF THE STATUTE OF LIMITATIONS

26.     Since the defects in the design or manufacture of the Strollers cannot be detected until the defect manifests, Plaintiffs and the Class were not reasonably able to discover the problem until after purchasing the Strollers, despite their exercise of due diligence.

27.     Claims under the Regulation of Business Practice and Consumer Protection Act (M. G. L. c. 93A) are governed by the four-year statute of limitations under M. G. L. c. 260 § 5A.  Although a cause of action under Chapter 93A typically accrues at the time injury results from the unfair or deceptive acts; this general statement is limited in that a cause of action does not accrue until a plaintiff discovers, or reasonably should have discovered, that she may have been injured as a consequence of defendant's conduct.

28.     Plaintiffs and the Class Members had no realistic ability to discern that the Stroller was defective until the design revealed itself as unreasonably dangerous.  In addition, despite their due diligence, Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Stroller was concealed from them, until manifestation of the safety hazard.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the Class Members.

29.     Plaintiffs are informed and believe that Dorel has known of the defect in the Strollers and their main hinges since at least 2002, and has concealed from or failed to alert owners of the Strollers of the defective nature of the main hinges.

30.     Any applicable statutes of limitation have therefore been tolled by Dorel's concealment and denial of the facts alleged here.  Dorel is further estopped from relying on any statues of limitation because of its concealment of the defective nature of the Strollers and their main hinges.

## CLASS ACTION ALLEGATIONS

31.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other United States residents similarly situated as members of a proposed Plaintiff Class pursuant to F. R. of Civ. P 23(a) and (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

32.     The Class is defined as:

> All persons in the United States of America who purchased a Cosco Juvenile Deluxe Comfort Ride Stroller with Canopy, Model 01834 PGH infant stroller for the model years 2002 – present. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest of Defendant and Defendant's legal representatives, assigns and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

33.     Numerosity: Although the exact number of Class Members is unascertained and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

34.     Typicality: The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, own Strollers designed, marketed, distributed and sold by Dorel in which the main hinges are unreasonably dangerous. The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they paid a readily ascertainable amount for the defective and unreasonably

dangerous stroller. Class members have or will suffer further damage to the extent that they have or will incur the cost of discarding and replacing the Stroller with a safe, non-defective Stroller. Furthermore, the factual bases of Dorel's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate and negligent misconduct resulting in injury to all Members of the Class.

35.     Commonality: There are numerous questions of law and fact common to Plaintiffs and the Class which predominate over any questions affecting only individual Class Members. These common legal and factual issues include the following.

a.     Whether the Strollers sold by Dorel are defectively designed and/or manufactured such that they are not suitable for their intended use.

b.     Whether Dorel knew or should have known of the inherent design or manufacturing defect in its Strollers;

c.     Whether Dorel fraudulently concealed from or failed to disclose to Plaintiffs and the Class the inherent problems with its Strollers;

d.     Whether Dorel had a duty to Plaintiffs and the Class to disclose the inherent problems with its Strollers;

e.     Whether the facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material;

f.     Whether the Stroller presents a "mechanical hazard" as defined by 16 C.F.R. 1500.3(b)(17);

g.     Whether as a result of Defendant's concealment of or failure to disclose material facts, Plaintiffs and the Class acted to their detriment by purchasing Strollers manufactured by Defendant;

h.     Whether Defendant failed to adequately warn Plaintiffs and the Class regarding the dangerously defective design of its Strollers;

i.        Whether Defendant breached the warranty of merchantability by making and selling a product that was unfit for the purposes for which the Stroller was intended to be used;

j.        Whether Defendant engaged in unfair competition or unfair deceptive acts or practices when it concealed the defective design and failed to warn Plaintiffs and Class Members of the defects in its Strollers;

k.        Whether Defendant's conduct in designing, distributing, marketing, advertising, providing instructions and warnings for, and/or selling its Strollers constitutes a violation of the Regulation of Business Practice and Consumer Protection Act (M.G.L. c. 93A) as defined in M.G.L. c. 93A §9;

l.        Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with its Strollers and for the costs and expenses of repair and replacement of the Strollers;

m.       Whether Plaintiffs and the Class are entitled to compensatory, multiple and statutory damages and the amount of such damages as a result of the defect;

n.        Whether Plaintiffs and the Class are entitled to replacement of their defective Strollers with non-defective Strollers;

o.        Whether Defendant should be ordered to disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of defective Strollers, or to make full restitution to Plaintiffs and the Members of the Class.

36.    Adequate Representation: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions — specifically actions involving defective products. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

37.     Predominance and Superiority: Plaintiffs and the Members of the Class have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Members of the Class would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Member's claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and effieiency of adjudication.

## CLAIM FOR RELIEF
### (Violation of Massachusetts' Consumer Protection Act, M. G. L. c. 93A)

38.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

39.     Defendant is a "person" as defined by M.G.L. c. 93A § 1(a).

40.     Plaintiffs and Class Members are consumers who purchased the Strollers.

41.     Defendant knew that its Strollers and main hinges were defectively designed or manufactured, were unreasonably dangerous, and were not suitable for their intended use.

42.     Defendant breached the implied warranty of merchantability and thereby committed an unfair and deceptive act (940 CMR 3.08(2));

43.     By failing to disclose and concealing the Stroller defect and thereby breaching the implied warranty of merchantability, Dorel violated M.G.L. c. 93A, *et seq.*, as it represented that its Strollers were of a particular standard, quality or grade when they were of another, thereby

employing deceptive acts or practices in the conduct of trade or commerce.  (*See* M.G.L. c. 93A § 2(a).)

44.     Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

45.     Defendant was under a duty to Plaintiffs and the Class to disclose the defective nature of the Strollers because:

        a.      Defendant was in a superior position to know the true state of facts about the safety defect in the Strollers' main hinge;

        b.      Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Strollers had a dangerous safety defect until manifestation of the failure; and

        c.      Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the safety defect.

46.     In failing to disclose the Stroller's design defect, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

47.     The facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Stroller.  Had Plaintiffs and the Class known the defective nature of the Strollers, they would not have purchased them.

48.     Plaintiffs and the Class reasonably expected the Strollers to be free from safety hazards, to both adults and children, and to be easy to use.  That is the reasonable and objective consumer expectation for infant strollers.

49.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

50.     Plaintiffs and the Class are also entitled to equitable relief.

11

51.     On behalf of all the class members, Plaintiffs have provided Dorel with class-wide notice of its alleged violations of the Regulation of Business Practice and Consumer Protection Act pursuant to M.G.L c. 93A, §9(3).  Dorel failed to provide appropriate relief for its violation of Chapter 93A within 30 days of the date of the notification letter.  While Dorel offered to pay for the Merrills' own cost of replacing the stroller, it made no offer to recall the stroller or reimburse other class members.  Such response was made in bad faith with reason to know that the acts complained of violated Chapter 93A.

## RELIEF REQUESTED

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court enter judgment against Defendant, as follows:

52.     An order certifying the proposed Plaintiff Class, designating Plaintiffs as named representatives of the Class and designating the undersigned as Class Counsel;

53.     A declaration that Defendant is financially responsible for notifying all Class Members of the Strollers' dangerous pinch-point on the locking mechanism;

54.     An order enjoining Defendant from further deceptive distribution, and sales practices with respect to its Strollers, and to remove and replace Plaintiffs' and Class Members' strollers with a suitable alternative product;

55.     An award to Plaintiffs and the Class of damages in such amount to be determined at trial to the full extent to all remedies as provided by law, with trebling where permitted by law;

56.     A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of its Strollers, or to make full restitution to Plaintiffs and the Members of the Class;

57.     An award of attorneys' fees and costs, as allowed by law;

58.     An award of pre-judgment and post-judgment interest, as provided by law;

58. An award of pre-judgment and post-judgment interest, as provided by law;

59. Leave to amend the Complaint to conform to the evidence produced at trial; and

60. Such other or further relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this court.

## DEMAND FOR JURY TRIAL

61. Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: October 7, 2008

Respectfully submitted,

By:

John F. Kehoe
BBO#: 264200
alma543@earthlink.net
KEHOE & CROSSON, P.C.
162 Washington Street
Wellesley, MA 02481
Telephone: (781) 235-0885
Facsimile: (781) 772-1596

Michael F. Ram
mfr@lrolaw.com
LEVY, RAM & OLSON
639 Front Street, Fourth Floor
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

Counsel for Plaintiffs Michael and Carol
Merrill, on behalf of themselves and all
others similarly situated

F:\docs\1134-01\COMPLAINT.doc

13